UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | DOCKET NO.: 3:17 CR 150 (VAB) |
| | : | |
| | : | |
| V. | : | |
| | : | |
| | : | |
| GABRIEL CORDERO | : | AUGUST 15, 2022 |

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, Gabriel Cordero, respectfully files his sentencing memorandum to assist the Court in arriving at a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing contained in 18 U.S.C. § 3553(a). When he is sentenced on August 29, Mr. Cordero will have been incarcerated for 62 months. He respectfully asks the Court to impose a non-guidelines sentence of 84 months.

I.      **Procedural Posture and Sentencing Guidelines Range**

Mr. Cordero pleaded guilty to one count of conspiracy to possess with intent to distribute 100 grams or more of heroin and 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). The base offense level is 32 because the parties have stipulated that his relevant and readily foreseeable conduct involved four kilograms of heroin and two kilograms of fentanyl. Two levels are added pursuant to U.S.S.G. § 2D1.1(b)(12) because Mr. Cordero maintained a drug involved premises. Three points are subtracted for his acceptance of responsibility under § 3E1.1, resulting in an adjusted offense level of 31. The criminal history category is III. The sentencing

guidelines range under the plea agreement is therefore 135 to 168 months, with a mandatory minimum of 60 months.[1]

## II.     Applicable Law

Because the sentencing guidelines are no longer mandatory, the District Court must consider the guidelines as well as the other factors set forth in § 3553(a) when determining a sentence that is "sufficient, but not greater than necessary" to meet the purposes of federal sentencing. United States v. Booker, 543 U.S. 220, 258 (2005); United States v. Crosby, 397 F.3d 103, 110-14 (2d Cir. 2005).

## III.    Argument

### A.     84 months is sufficient, but not greater than necessary, to satisfy the § 3553(a) goals of sentencing

After consideration of Mr. Cordero's background, personal and family circumstances, his recognition of wrongdoing, remorse, generally good conduct while incarcerated for more than five years, insight into this behavior and prospects for the future, he respectfully asks the Court to impose a sentence of 84 months.

Gabriel Cordero is 35 years old. His parents broke up and his father left home when he was only four. His mother married Mr. Cordero's stepfather when Mr. Cordero was six. Although his mother and stepfather owned and operated a successful

---

[1] The United States Probation Office has recommended that the Court impose two additional enhancements – two levels for possession of a dangerous weapon under § 2D1.1(b)(1) and three levels under the manager or supervisor provision of § 3B1.1(b). As discussed below, Mr. Cordero does not believe that these proposed enhancements apply.

restaurant in Puerto Rico, his neighborhood was infested with drugs, violence and a high crime rate. The industriousness of Mr. Cordero's parents resulted in financial stability for the family, but it also meant that he was not supervised very closely, particularly at night when the restaurant conducted most of its business. This led to Mr. Cordero being enticed by the excitement of street life at a young age. In the absence of consistent parental supervision at an impressionable age, young Gabriel was lured by the negative influences that may not have been present inside his home, but were ubiquitous in the community. Having been desensitized to the harmful effects of drugs and crime at an early age, Mr. Cordero began using drugs at age 11 and eventually started selling them. This ultimately and unfortunately resulted in his involvement in this case.

But there is reason for hope. This case has had a profound effect on Mr. Cordero. We have spent many hours at Wyatt discussing not only the factual allegations and legal issues, but also why selling drugs is not a victimless crime. Mr. Cordero has never hid or minimized his role in the charged conspiracy. He has expressed remorse and impressive insight into the negative effects of drug activity during our conversations. Mr. Cordero has also consistently expressed his understanding that his past behavior has gotten him nowhere and that he has a responsibility to change. Not surprisingly, therefore, he has no intention to sell drugs again. This bodes well for his future, as does the increased maturity that comes with age; at 35 years old, Mr. Cordero is at an age where statistics show that people tend to "age out" of criminal behavior.

Making a change will not be easy, of course. The right mindset is an important component of rehabilitation, but more is required to make a permanent change. Mr. Cordero understands that education and vocational training are key. He has enrolled in a GED course at Wyatt (that was only recently offered). Upon completion of his GED, Mr. Cordero intends to enroll in a driving course to obtain his commercial driver's license. A CDL will allow him to get a good job that provides personal and professional fulfillment and financial independence.

Mr. Cordero has already begun to apply his newfound commitment to follow the rules when he is released. He has been incarcerated at Wyatt since his arrest on June 29, 2017. He has maintained generally good conduct during that time, having received only two disciplinary infractions, one in February, 2018 and the other March, 2019. He has not received any infractions in nearly three-and-a-half years. Mr. Cordero's track record at Wyatt is an objective indication that he is prepared to change his lifestyle.

The numerous tragedies that have befallen Mr. Cordero have also caused him to recognize the importance of cherishing life and to not take his freedom for granted now that he is in his mid-thirties. As summarized in the PSR, Mr. Cordero had one child who was stillborn, another who died at three months old from a heart murmur, and a third child who died at four months old when she was accidentally suffocated by her mother who fell asleep while breastfeeding. (Doc. 961 ¶¶ 62-63). Losing a child is the worst thing that happen to anyone; Mr. Cordero has lost three (and actually a fourth if we count the one whose mother miscarried). The effect, not surprisingly, has been that he

has committed to live the rest of his life in a way that honors his departed children. When considering the awful effect of drugs on a person's wellbeing and their families, nothing resonates like the pain associated with the death of one's own child. The same pain that Mr. Cordero knows firsthand is experienced by many parents who have lost children to the scourge of narcotics. He may not have given sufficient consideration to this before, but his eyes have now been opened with the benefit of his time at Wyatt.

Mr. Cordero will have served 62 months when he is sentenced. This is significant punishment and already more than double the sole previous sentence that he has served. The message is clear to him from his long pretrial detention and the sentencing guidelines range that selling drugs is unacceptable. He understands that he faces years in prison and the related fallout – future separation from family, loss of employment or employment opportunities and social embarrassment, among many other negative collateral consequences. A sentence within or even near his guidelines range will not materially promote any sentencing purpose because the time Mr. Cordero has already served, and twenty-two additional months, sends a loud and clear message that such behavior will not be tolerated. From our many discussions, I am confident that he understands this.

When deciding on the appropriate sentence, Mr. Cordero also respectfully asks the Court to consider that he has been incarcerated during the entire COVID-19 era when detention has been harsher, both physically and mentally. Programming, work assignments and general movement had been severely curtailed for months as Wyatt

tried to contain the spread of the virus. Family visits were eliminated for weeks or months at a time. Inmates were required to wear masks constantly for several months, but still lived in constant fear of contracting the virus. Mr. Cordero has contracted Covid four times at Wyatt, in March 2020, December 2020, June 2021 and January 2022. (See Doc. 938 ¶ 66). Despite the frequency of his illnesses and the fact that he is obese, which is a known Covid risk factor, Mr. Cordero never sought release on bond due Covid, even as thousands of other detainees and sentenced prisoners have sought bond or sentence reductions due to Covid in the last two-and-a-half years.[2] The need for retribution must therefore be tempered by the increased severity of Mr. Cordero's incarceration.

A brief discussion about Mr. Cordero's criminal history score that places him in CHC III is in order to put it in context. The criminal history score derives from only one conviction. Mr. Cordero received three criminal history points for a conviction that resulted in a two-year sentence and an additional two points because he was on probation from that conviction when he was charged in this conspiracy. (Doc. 961 ¶ 44). Thus, all five of Mr. Cordero's criminal history points stem from one conviction that resulted in a two-year sentence. Without that sole conviction and resulting probation violation, Mr. Cordero would be in CHC I and his guidelines range would have been 108

---

[2] Mr. Cordero filed two motions to be released on bond. The first was for a one-day temporary release so he could spend time with his terminally ill infant daughter in January 2018. (Doc. 149). The motion was granted, (Doc. 157), and Mr. Cordero timely returned to custody without incident. The second was in March, 2022, but was unrelated to any of his four Covid infections. (Doc. 860). That motion was denied. (Doc. 891).

to 135 months. This is not to suggest that the three-point conviction and probation violation should be ignored, or even that a downward departure is appropriate for overrepresented criminal history under § 4A1.3(b), but it bears mentioning when only one conviction changes the criminal history score from 0 to 5, and the category from I to III.

Mr. Cordero would certainly benefit from vocational training. Given his desire to finally obtain his long-overdue GED and to follow it up by enrolling in a CDL licensing course, the prospects for him to make an honest living when he is released are excellent. At age 35, it is not too late for Mr. Cordero to make a new start and obtain his GED and CDL. The older he gets, however, the more difficult it will be for him to obtain the necessary education, training and work experience to get established professionally. Prolonged additional incarceration will merely delay and potentially impede his ability to embark on a new path.

While Mr. Cordero would certainly benefit from vocational training, a prison sentence should not be used for that purpose. See 18 U.S.C. § 3582 ("[t]he court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that *imprisonment is not an appropriate means of promoting correction and rehabilitation*") (emphasis added). See also United States v. Pallowick, 364 F. Supp. 2d 923, 930 (E.D. Wis. 2005) (imposing sentence of 46 months despite guidelines range of 70 to 87 months where

defendant was convicted of six armed bank robberies because, *inter alia*, lengthy incarceration would inhibit rehabilitation).

Under all these circumstances, a sentence of 84 months is sufficient, but not greater than necessary, to reflect the seriousness of the offense and promote specific and general respect for the law.

**B.     The Court should adopt the offense level negotiated by the parties; if not, the Court should exercise its discretion by departing under <u>Fernandez</u> to give effect to the plea agreement**

The parties negotiated a plea agreement that included a two-level enhancement under § 2D1.1(b)(12) because Mr. Cordero maintained drug involved premises. (Doc. 889 at 4). As part of the negotiation, the government did not seek any other sentencing enhancements. The guidelines range negotiated by the parties materially affected Mr. Cordero's decision to plead guilty, which conserved judicial and governmental resources. The PSR nevertheless suggests that the Court add two additional unnegotiated enhancements, two levels under § 2D1.1(b)(1) for possession of a dangerous weapon and three levels under § 3B1.1(b) because Mr. Cordero was a manager or supervisor. Neither enhancement should apply.

The weapon that is the subject of the first enhancement was found in a parked vehicle that Mr. Cordero was not driving when he was arrested. The second enhancement applies if a defendant "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). As summarized in the PSR, Mr. Cordero and

codefendant A.P. "were very close associates who assisted each other with their narcotics trafficking activities." (Doc. 961 ¶ 14). Wiretapped communications showed that they worked together. (Id.) Two other codefendants, F.T. and D.P.R., maintained apartments where drugs were stored and served narcotics on behalf of Mr. Cordero and A.P., but it cannot be said that Mr. Cordero managed or supervised anyone other than F.T. and D.P.R., if at all, or that the operation was so extensive as compared to other drug operations that the § 3B1.1(b) enhancement applies. Additionally, although Mr. Cordero and A.P. worked closely together, it does not appear that the United States Probation Office (or the government) sought the manager or leader enhancement as to A.P. (See Docs. 450, 494). Nor did the government seek an enhancement for possession of a dangerous weapon despite finding .40 caliber ammunition in A.P.'s home and a .40 caliber firearm in the car that was parked in A.P.'s driveway when he was arrested. (See Doc. 494 at 6). Under these circumstances, the Court should not impose the three-level manager or supervisor enhancement.

If the Court nevertheless agrees with the probation office as to either enhancement, Mr. Cordero respectfully asks the Court to depart under United States v. Fernandez, 877 F.2d, 1138 1145 (2d Cir. 1989). The probation officer agrees that a Fernandez departure may be appropriate to give effect to the plea agreement. (Doc. 961 ¶ 103). Miscalculations of the sentencing guidelines sometimes occur for a variety of reasons, including due to their complexity or the debatable application of a guideline to a particular scenario. For more than thirty years, therefore, district courts in the

Second Circuit have "retain[ed] an important measure of individualized discretion, under appropriate circumstances, to depart from the sentence mandated by the Guidelines." Id., 1144. Such permissible departures include to give effect to a plea bargain. Id., 1145.

Experience and anecdotal information reveal that courts in this district have been willing to depart under Fernandez. Doing so is appropriate at least in part because of the crucial role of plea bargaining in the criminal justice system and the reliance interests that such agreements create. This includes cases such as this, where the parties contemplated a lower guidelines range than the one calculated in the PSR. Giving effect to a plea agreement is also appropriate because the parties are best able to assess the defendant's level of wrongdoing based on the information in the discovery. If anything, a Fernandez-based sentence is even more appropriate today than when Fernandez was decided in 1989 because the guidelines were mandatory in 1989, but no longer are. See Booker, 543 U.S. 220.

**C.    Mr. Cordero would benefit from RDAP**

In addition to any other conditions imposed by the Court, Mr. Cordero respectfully asks that he be recommended for the 500 hour Residential Drug Abuse Program pursuant to 18 U.S.C. § 3621. Given his substance abuse history, Mr. Cordero qualifies and will benefit from the intensive treatment offered by RDAP. (See PSR ¶ 67).

IV.     **Conclusion**

For the foregoing reasons, Gabriel Cordero respectfully asks the Court to impose

a sentence of 84 months.

**DEFENDANT
GABRIEL CORDERO**


By: *s/ Jeffrey C. Kestenband*
     Jeffrey C. Kestenband
     Fed. Bar No.: ct 19003
     The Kestenband Law Firm LLC
     2389 Main Street
     Glastonbury, CT 06033
     Tel. No.: (860) 659-6540
     Fax No.: (860) 397-6550
     Email: jkestenband@kestenbandlaw.com

**CERTIFICATION**

This is to certify that the foregoing was filed electronically, on this 15th day of
August, 2022.  Notice of the filing will be sent by email to all parties by operation of the
Court's electronic filing system or by mail to anyone unable to accept electronic filing.
Parties may access this filing through the Court's system.

*s/ Jeffrey C. Kestenband*